D'ANGELO, Plaintiff, v. CORNELL PAPERBOARD PRODUCTS COMPANY, Defendant: EMPLOYERS MUTUALS LIABILITY INSURANCE COMPANY, Intervenor and Appellant: INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Impleaded Defendant and Respondent.

*November 29, 1966—January 3, 1967.*

220

For the appellant there were briefs by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs*.

For the respondent there was a brief by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack*.

WILKIE, J. A threshold issue may be stated as follows: Is an order appealable which sustains a motion for a plea in abatement dismissing the action against one of the defendants where the action still continues after dismissal?

## *Appealability.*

Respondent contends that the order sustaining the plea in abatement is not appealable because the respondent was dismissed from the action without prejudice and without costs. Sec. 274.33, Stats., designates orders which are appealable to the supreme court. Sec. 274.33 (1) provides for appeal as to an order "affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken." Respondent argues that the action will still continue after it is dismissed. Thus the action is not determined nor is the

entry of judgment prevented. Respondent concludes that the order is, therefore, not appealable.

But the case of *Newberger v. Pokrass* [2] holds otherwise and is controlling here. In *Newberger* the plaintiff sued defendant Pokrass and also attempted to sue Pokrass' insurance company; the insurance company moved for a plea in abatement on the basis of a "no action" clause in its policy. The trial court issued an order sustaining the plea in abatement and dismissing the complaint. Plaintiff appealed and our court held the order was appealable.

"The dismissal resulted from the court's sustaining a plea in abatement. In *Cottrill v. Pinkerton* (1931), 206 Wis. 218, 239 N. W. 442, it was held that an order *denying* a plea in abatement was not an appealable order; the court went on to say, at page 219:

" '. . . if the plea in abatement had been sustained it would have prevented a final judgment in the action, in which event the order would have been appealable under the express provisions of said section.'

"Also, in *Prochnow v. Northwestern Iron Co.* (1914), 156 Wis. 408, 409, 145 N. W. 1098, 145 N. W. 1104, it was stated that an order resulting from a plea in abatement which dismissed the action as to one of the defendants was appealable. The order in the instant case dismissed the action as to one of the defendants and, as such, is appealable." [3]

In the instant case the order also dismissed the action as to one of the defendants only. Such an order is appealable because it prevents judgment against the dismissed defendant in the action in question.[4] The order sustaining the plea in abatement was an appealable order.

The order being appealable, three issues are raised on the merits of the order.

---

[2] (1965), 27 Wis. (2d) 405, 134 N. W. (2d) 495.

[3] Id. at page 409.

[4] *Truesdill v. Roach* (1960), 11 Wis. (2d) 492, 105 N. W. (2d) 871.

1. Is a forklift truck being operated on private property a motor vehicle for purposes of the direct-action statute?

2. Does a stipulation to permit an answer to be amended waive any defense to an assertion made in the answer?

3. Where a defense is asserted in the answer and the defense does not go to the merits of the action, must a claim of waiver of that defense be pleaded by an amendment to the complaint?

### Direct-Action Statute.

Sec. 260.11, Stats., permits a direct action against an insurance company "[i]n any action for damages caused by the negligent operation, management or control of a motor vehicle." Sec. 260.11 also provides, if the accident occurred in Wisconsin, that this right of direct action may not be affected by a provision in the policy or contract of insurance forbidding such direct action. Appellant contends that the forklift truck which was negligently operated was a motor vehicle within the direct-action statute. If this contention is sustained, the respondent's assertion of the "no action" clause is ineffective as a means of dismissing the respondent from the action.

In the case at bar the vehicle in question was a forklift truck being operated on private property and not on the public highways. In *Rice v. Gruetzmacher*[5] a forklift was also involved and it was also being operated on private property. This court concluded that a vehicle such as a forklift was not a motor vehicle under the direct-action statute unless being operated upon a highway at the time of the accident. The rationale of that holding was a distinction between motor vehicles and "a class of self-propelled land vehicles which are designed primarily

---

[5] (1965), 27 Wis. (2d) 46, 133 N. W. (2d) 401.

for uses dissimilar to transporting or drawing persons or property upon a highway." [6]

*Nelson v. Ohio Casualty Ins. Co.*[7] spells out the distinction more definitively than *Rice*. *Nelson* states that in *Rice* our court was "dealing with a class of motor-propelled vehicles so designed that they might never be used for transporting or drawing persons or property on a public highway." [8] *Rice* established that such a class of vehicles were not motor vehicles within the meaning of sec. 204.30 (4), Stats., unless operated on a public highway at the time the accident occurred.[9]

In the case at bar the forklift truck was not a motor vehicle within the direct-action statute unless it was being operated on a public highway at the time of the accident. At that time the forklift truck was being operated on private property. This is not disputed. Thus, the forklift is not a motor vehicle and the appellant may not directly sue respondent under sec. 260.11, Stats.

Appellant contends, however, that the nature of the vehicle involved and not the place of the accident is controlling. Appellant attempts to distinguish *Rice* by stating that the forklift in question was frequently operated on the public highway. Appellant emphasizes this distinction because of the difference in sec. 341.05, Stats., at the time of the accident in the case at bar and at the time of the accident in *Rice*. In 1958, sec. 341.05 (12) exempted vehicles from registration if the vehicle was "a fork-lift truck or a trailer which is used principally off the highway and is operated only across a highway." At the time *Rice* was decided, however, sec. 341.05 (12) stated that a vehicle was exempted from registration when it "Is a fork-lift truck or a trailer which is used principally off the highway."

---

[6] Id. at page 51.

[7] (1966), 29 Wis. (2d) 315, 139 N. W. (2d) 33.

[8] Id. at page 322.

[9] Ibid.

Appellant's affidavit supports the contention that the forklift truck in this case was frequently used on the highway, not just operated across the highway. Thus the forklift truck was required to be registered and became a motor vehicle because it was not exempted from registration.

The fact that a vehicle is or is not a motor vehicle for purposes of registration under sec. 341.05, Stats., has no relationship to whether a vehicle is a motor vehicle for purposes of the direct-action statute. In *Snorek v. Boyle* [10] our court adopted the definition of motor vehicle contained in sec. 340.01 (35) and *Rice* specifically excludes vehicles which are not primarily designed for transporting or drawing persons or property upon a highway from coverage by the direct-action statute. In *Rice,* a forklift truck similar to the one in the case at bar was specifically held to be part of such a class of vehicles so that it was not covered unless the forklift was being operated on a public highway.

We conclude, therefore, that Indemnity could not be joined as a party defendant under sec. 260.11, Stats. Joinder then must be permitted, if at all, by the ruling that Indemnity waived its right to assert the "no action" provision of its policy with Cornell.

### Effect of Stipulation.

Appellant attempted to assert the defense of estoppel to prevent the order granting a plea in abatement based on the "no action" clause in the insurance policy. The essence of this defense is that the respondent had asserted that there was no policy coverage. By such an assertion, the authorities uniformly hold that any defenses based on clauses in the policy are waived. In particular, once a

[10] (1962), 18 Wis. (2d) 202, 118 N. W. (2d) 132.

defense of no-policy coverage is asserted, any defense based upon the "no action" clause is waived.[11]

Although appellant mistakenly argued estoppel instead of waiver, the basis of appellant's contention that the "no action" clause could not be utilized by respondent was made clear to the trial court in appellant's affidavit pursuant to the motion for a plea in abatement. The trial court refused to permit appellant to assert this defense to the "no action" clause because appellant had stipulated to permit respondent to amend his complaint to include the clause as one of its defenses.

In substance, the trial court's position is that appellant's stipulation to permit an amendment to the pleadings waives any defenses to claims or defenses which might be asserted in the amended answer. This construction of the stipulation is much too broad. In the construction of stipulations, the primary rule is to ascertain and give effect to the intention of the parties.[12] Any ambiguity in stipulations may be resolved by resorting to statements of counsel made in the presence of the trial judge.[13] In this instance appellant's counsel made clear to the trial judge that he had stipulated to permit the answer to be amended merely as a procedural facilitation. Based on these statements, a narrow construction should be given to the scope of the stipulation.

The trial court is also wrong about the effect of the stipulation. It assumed that the stipulation was tantamount to an admission of the truth of any amendment made to the answer. The stipulation, however, merely permitted an amendment to be made but did not acknowl-

---

[11] *United States Guarantee Co. v. Liberty Mut. Ins. Co.* (1943), 244 Wis. 317, 12 N. W. (2d) 59; *Jahns & Knuth Co. v. American Indemnity Co.* (1924), 182 Wis. 556, 196 N. W. 569; Anno. 49 A. L. R. (2d) 694, 743.

[12] 83 C. J. S., Stipulations, p. 26, sec. 11.

[13] *Kovarik v. Vesely* (1958), 3 Wis. (2d) 573, 89 N. W. (2d) 279.

edge the binding force of the amendment. In Wisconsin, by analogy, our court has held that a stipulation as to the admission of evidence does not mean such evidence is accepted as true, material, or of any probative force.[14] Other states have directly held that a stipulation permitting pleadings to be amended does not waive any defenses to the amended pleadings.[15] The stipulation to permit the answer to be amended does not waive any defenses the plaintiff may have to the amended answer.

### The Defense of Waiver.

The trial court also refused to permit the appellant to assert the defense of waiver because it had failed to plead it. The general rule is that a waiver must be specially pleaded where there is an opportunity to do so.[16] The minority rule, however, is that waiver need not be specifically pleaded [17] and Wisconsin embraces the minority rule.[18] Respondent cites the case of *Allstate Ins. Co. v. Moldenhauer* [19] for the proposition that the defense of waiver is an affirmative defense and must be pleaded. This holding in *Moldenhauer* was dicta since the court found that no waiver had occurred. The rule in Wisconsin is that the defense of waiver does not need to be pleaded.

Moreover, the procedural context of the case at bar distinguishes it from those cases that require the de-

---

[14] *Kundert v. Riese* (1937), 225 Wis. 276, 274 N. W. 286; *Industrial Co-operative Union v. Lewis* (1921), 174 Wis. 466, 182 N. W. 861.

[15] *Shongut v. Margolis* (1959), 10 App. Div. (2d) 885, 193 N. Y. Supp. (2d) 925, affirmed, 202 N. Y. Supp. (2d) 222; *Farmers' Co-operative Ditch Co. v. Riverside Irrigation Dist.* (1909), 16 Idaho 525, 102 Pac. 481.

[16] 56 Am. Jur., Waiver, p. 118, sec. 18; Anno. 120 A. L. R. 8, 37.

[17] Anno. 120 A. L. R. 8, 50.

[18] *Foster v. Fidelity & Casualty Co. of New York* (1898), 99 Wis. 447, 453, 75 N. W. 69; *Reisz v. Supreme Council American Legion of Honor* (1899), 103 Wis. 427, 435, 79 N. W. 430.

[19] (7th Cir. 1952), 193 Fed. (2d) 663.

fense of waiver to be pleaded. In the case at bar, a defense was asserted by an amended answer. This defense was met by a contention of waiver, although the plaintiff appellant did not amend his complaint to make such an allegation. Under sec. 263.20, Stats., no reply is permitted to an answer unless the answer raises a counterclaim. Sec. 263.26 provides that the allegation of new matter in an answer not pleaded as part of a counterclaim is "deemed controverted." Under this statute, the respondent's reliance on the "no action" clause is "deemed controverted" by whatever defenses, including waiver, the appellant can muster.

It is true that the case of *Schneck v. Mutual Service Casualty Ins. Co.*[20] limits the scope of the "deemed controverted" statute. But in *Schneck* the passenger plaintiffs were suing the owner's insurer for damages arising out of an automobile accident. One problem in the case was whether the driver had the owner's permission to drive, as she had no driver's license and was not a member of the owner's family. The insurance company alleged lack of permission to drive as an affirmative defense because the girl would not be covered by the insurance policy. At the trial, over the defendant's objection, the plaintiffs put in evidence a certificate of the motor vehicle department which stated that the defendant had not corrected the SR–21 form in compliance with sec. 344.15, Stats., and, therefore, was estopped from using lack of permission as a defense.

The trial court held that such evidence surprised the defendant and ordered a new trial in the interests of justice. The supreme court held that it was error to admit any evidence of estoppel because estoppel had not been specifically pleaded. In *Schneck* the court required the plaintiff to amend his complaint and allege estoppel.

In the case at bar the matter arose before trial, and the trial court was adequately informed that the appellant

[20] (1963), 18 Wis. (2d) 566, 119 N. W. (2d) 342.

would rely on the defense of waiver (although plaintiff's affidavit is couched in terms of estoppel). One of the purposes of pleadings is notification, and that purpose is met here without requiring the appellant to plead waiver.

A further reason exists for not applying the *Schneck* rule to the case at bar to require the appellant to amend its cross complaint to assert a defense of waiver. In *Schneck,* the defense of estoppel went to the merits of the action. In the case at bar, the defense of waiver in no way affects the merits of the action, but merely prohibits dismissal of an insurance company who (assuming coverage) will be ultimately responsible for the judgment. This court has limited *Schneck* insofar as it requires pleading of estoppel to situations where estoppel affects the merits of the cause of action.[21] The defense of waiver in the case at bar does not go to the merits of the action and this is one more reason why it need not be pleaded by amending the original complaint. The "no action" clause defense is deemed controverted.

*By the Court.*—Order reversed.

---

[21] *McLaughlin v. Chicago, M., St. P. & P. R. Co.* (1964), 23 Wis. (2d) 592, 597, 127 N. W. (2d) 813.