COURT OF APPEALS
DECISION
DATED AND FILED

July 24, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP71**

Cir. Ct. No. **2016CV307**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

MOHNS INC.,

PLAINTIFF-RESPONDENT,

V.

BMO HARRIS BANK NATIONAL ASSOCIATION,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: KATHRYN W. FOSTER, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. BMO Harris Bank National Association (BMO) appeals from an order awarding compensatory damages ($239,249), punitive damages ($478,498), and attorney's fees ($113,940) to Mohns Inc. arising out of BMO's conduct in relation to a construction loan for a condominium project for which Mohns served as the general contractor. BMO raises numerous challenges to the proceedings in the circuit court. We are not persuaded by BMO's challenges, and we affirm.

Overview

¶2 Mohns, a general contractor, was building a condominium project for Bouraxis Properties, a developer (hereafter, the developer). After a banking merger, BMO succeeded as the developer's construction lender. In July 2011, BMO sold assets, including the developer's loan, to MIL Acquisition. Thereafter, MIL rejected Mohns' draw requests. Mohns sued BMO alleging breach of contract, unjust enrichment, and misrepresentation arising out of BMO's assurances that there were funds to pay Mohns for past and future work. Mohns alleged that it relied upon BMO's representations to continue working on the project. By doing so, Mohns claims that its work enhanced the project's value during the time BMO was selling the developer's construction loan.

¶3 The presence of factual issues in the record led the circuit court to deny BMO's motion for summary judgment. Later, as a sanction for BMO's discovery violations, the circuit court granted summary judgment against BMO on liability as to all three of Mohns' claims. Thereafter, a jury awarded Mohns

damages, including punitive damages. The circuit court reduced the punitive damage award and also awarded Mohns attorney's fees. BMO appeals.[1]

Denial of Summary Judgment to BMO

¶4 On appeal, BMO argues that it should have prevailed on summary judgment as to all of Mohns' claims: breach of contract, unjust enrichment, and misrepresentation. Construing the summary judgment record in favor of Mohns, we conclude that material facts were in dispute as to all three claims.

¶5 We review the circuit court's summary judgment decision de novo, and we apply the same methodology employed by the circuit court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). "We independently examine the record to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law." *Streff v. Town of Delafield*, 190 Wis. 2d 348, 353, 526 N.W.2d 822 (Ct. App. 1994). "The moving party bears the burden of establishing the absence of a genuine, that is, disputed, issue of material fact…. [W]e view summary judgment materials in the light most favorable to the non-moving party." *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767 (citation omitted). Summary judgment is inappropriate if there are disputed issues of material fact, *Clay v. Horton Mfg. Co.*, 172 Wis. 2d 349, 353-54, 493 N.W.2d 379 (Ct. App. 1992), or if

---

[1] Mohns has not cross-appealed the circuit court's reduction of the jury's punitive damage award from $1 million to twice compensatory damages. *See* WIS. STAT. § 895.043(6) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

reasonable competing inferences can be drawn from undisputed facts, ***Delmore v. American Family Mut. Ins. Co.***, 118 Wis. 2d 510, 516, 348 N.W.2d 151 (1984).

¶6      In denying summary judgment, the circuit court stated that "the shortcomings of [Mohns'] case related to intentional misrepresentation are a result of [BMO's] violation of the discovery rule."   BMO does not confront this particular determination on appeal.   The court also foreshadowed and warned BMO that if it failed to comply with discovery requests, the court would sanction BMO for the discovery violation by granting summary judgment against BMO.

¶7      The circuit court determined that there were material facts in dispute as to each of Mohns' claims:  whether BMO orally agreed to pay Mohns from the construction loan funds, whether Mohns' work on the project conferred a benefit on or provided value to BMO, and whether BMO made false statements in relation to payments to be made to Mohns.  Focusing on the time period from March 2011 to July 2011, a period during which the developer's loan was being marketed and sold, and into October 2011, the circuit court determined that there were material factual disputes relating to whether representations were made to Mohns that it would be paid for work it had performed to date and whether such representations induced Mohns to continue working on the project, whether Mohns properly documented its draw requests, and whether Mohns' work on the project benefitted BMO and reduced BMO's loss on the sale of the developer's construction loan. The circuit court's assessment is supported by the record.

¶8 The record reveals factual issues in dispute as to all of Mohns' claims.[2] The affidavit of Benjamin Mohns (hereafter, Benjamin) submitted in opposition to summary judgment avers that Mohns declined to work on the project unless it received assurances that funds were available to pay Mohns. Patrick Caine, the bank officer who signed the developer's loan agreement and dealt with loan matters, told Benjamin that the bank had set aside $223,011 for work yet to be completed and offered assurances that Mohns would be paid for its work on the project.[3] Benjamin averred that as a follow-up to his conversation with Caine, Caine directed another employee to provide Mohns with the financial information Benjamin and Caine had discussed. BMO also provided a letter to one of Mohns' subcontractors assuring the subcontractor that funds were available to pay for the work. Benjamin averred that after receiving assurances that Mohns would be paid, Mohns worked on the project during the time BMO was in the process of selling the loan, but Mohns was not paid for the work.

¶9 Benjamin made substantially the same claims in his deposition. In his deposition, Benjamin cited an e-mail from Caine's coworker advising the developer's representative of the amount of funds available for the project; one of those e-mails arrived in June 2011 before the loan was sold. Benjamin testified that he had reason to think that Caine "intentionally lied" to him about the

---

[2] BMO argues that any alleged oral contract with Mohns relating to payment for its work is unenforceable under WIS. STAT. § 241.02(3)(b)1. By citation to the record, BMO does not establish that it made this argument in the circuit court. We decline to search the record. *See Mogged v. Mogged*, 2000 WI App 39, ¶19, 233 Wis. 2d 90, 607 N.W.2d 662 (1999); *Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333 (Ct. App. 1983) (we do not address issues raised for the first time on appeal).

[3] In his deposition, Caine testified that he recalled speaking with Mohns about funds being available to complete the project.

availability of funds because Caine knew the developer's loan was in default, and the loan was being sold.

¶10   Mohns also argued that its ability to develop evidence on matters relating to the loan was hamstrung by BMO's failure to produce a corporate representative with knowledge on this topic.

¶11   With regard to the unjust enrichment claim, Mohns alleged that during 2011, BMO was in the process of selling the loan, and the sale price was being determined with reference to the value of the condominium project which served as collateral for the developer's construction loan. The loan was sold in July 2011. Mohns argued that its work on the property in 2011[4] enhanced the value of the project. Mohns also relied upon Caine's deposition in which he authenticated an appraisal of the condominium project showing that the portions of the project with buildings had a higher value than the portions that were vacant and stated that the value of the project was increased due to the presence of a building. Caine agreed that Mohns' 2011 work added value to the project and affirmed that the developer's loan was sold based on the value of the project, but for less than the balance due on the loan. The record contains factual disputes about whether Mohns' continued work on the property benefitted BMO in relation to the valuation of the developer's loan which BMO sold.[5]

---

[4] In 2011, Mohns finished a building, roughed in another building, and installed finish materials in a third building.

[5] The elements of unjust enrichment are a benefit conferred by Mohns upon BMO, an appreciation of that benefit by BMO, and BMO's retention or acceptance of that benefit under circumstances that would make it inequitable to retain the value without paying for it. *See S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977).

¶12     We conclude that the summary judgment record demonstrates that there were material facts in dispute or reasonable competing inferences as to the existence of a contract which BMO allegedly breached, whether BMO was unjustly enriched by Mohns' work on the project during the time BMO was marketing and selling the developer's construction loan, and whether BMO engaged in misrepresentation.  The circuit court did not err in denying BMO's summary judgment motion.

Summary Judgment Against BMO as a Discovery Sanction

¶13     BMO argues that the circuit court erroneously granted summary judgment on liability as a sanction for BMO's discovery violations.

¶14     Whether and how to sanction BMO was discretionary with the circuit court.  *Industrial Roofing Serv. v. Marquardt*, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898.  We will sustain a discretionary decision if the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."  *Id.* (citations omitted).  Conduct in relation to discovery is sanctionable if a party acts egregiously by failing to comply with circuit court discovery orders without a clear and justifiable excuse.  *Id.*, ¶43.

¶15     In January 2017, Mohns moved the circuit court to compel BMO to comply with discovery and to impose sanctions because BMO did not provide the information requested, did not produce the documents requested, and in response to a notice of corporate deposition, did not produce a witness who could testify about the topics listed in the deposition notice.

¶16     After a hearing, the circuit court made the following findings. Caine, whom BMO produced as a corporate representative, was not familiar with the documents that would have permitted him to answer questions in the topic areas Mohns identified.  In addition to BMO's failure to produce a witness with knowledge of the areas listed in the deposition notice, BMO either declined to produce documents or produced redacted documents without seeking a protective order.  The circuit court clearly instructed BMO that it had to produce a corporate representative for deposition who had knowledge of the areas identified, whether firsthand or obtained in preparation for the deposition, and had to seek a protective order with regard to any documents it declined to produce in unredacted form.

¶17     Further discovery occurred.  Thereafter, the circuit court addressed and denied BMO's summary judgment motion, as discussed above.  During the March 2017 summary judgment hearing, the court warned BMO that if it failed to comply with discovery requests and circuit court orders, the court would grant summary judgment as a sanction.

¶18     In May 2017, citing discovery disputes and violations of the circuit court's discovery orders, Mohns filed motions in limine and sought sanctions.  The circuit court made the following findings of fact supporting its decision to sanction BMO.  BMO was disingenuous in its arguments that it had complied with the court's discovery orders.[6]  Mohns' discovery requests were straightforward, but BMO obfuscated the materials and witnesses that should have been available during discovery as Mohns inquired regarding the loan sale.  BMO did not

---

[6] The circuit court placed BMO's conduct during discovery in the context of the "runaround" BMO gave Mohns on the question of whether it would be paid for its work on the project.

8

respond to discovery requests and "blatant[ly] disregarded" the court's prior directive as to the type of witness that BMO should produce as a corporate representative and "egregiously ignor[ed]" its discovery obligations. BMO's production of Natalie Johnson as a corporate witness did not comply with the court's discovery order that BMO produce a witness with knowledge of the subject areas identified in the deposition notice.[7] Johnson gave nonresponsive answers because she had not reviewed documents germane to the claims and the subjects identified in the deposition notice. BMO belatedly provided discovery materials.

¶19 Citing BMO's "egregious behavior" in violating the court's orders and "not being responsive to Mohns' simple direct request for discovery," the circuit court imposed a sanction of summary judgment on liability against BMO, leaving only damages for trial. The circuit court also awarded attorney's fees to Mohns from September 16, 2016, forward.

¶20 On appeal, BMO argues that the summary judgment discovery sanction was unwarranted and excessive because BMO neither violated any court order nor evaded its discovery obligations.

---

[7] In its order denying BMO's summary judgment motion, the circuit court set out its finding that BMO previously failed to comply with WIS. STAT. § 804.05(2)(e) and directed BMO to produce a corporate representative for deposition in compliance with the statute.

¶21    BMO does not convince us that the circuit court's findings of fact are clearly erroneous.[8]   We conclude that the court's findings and reasonable inferences therefrom about BMO's conduct are supported in the record.   The circuit court applied the proper legal standard—egregious conduct—to its findings of fact.  *See Marquardt*, 299 Wis. 2d 81, ¶43.   Granting summary judgment to Mohns was a proper exercise of circuit court discretion to impose a sanction for BMO's egregious conduct in relation to discovery.

## Sufficiency of the Evidence Regarding Damages

¶22    Having granted summary judgment to Mohns on liability, only Mohns' damages, including punitive damages, remained for trial.[9]

¶23    Preliminarily, we address the manner in which BMO briefs its challenge to the damages awarded by the jury.   Significantly, BMO seems to ignore that the circuit court granted summary judgment against it on liability.   The jury was not required to determine BMO's liability, only the damages, if any, it owed to Mohns.   The verdict form reflects the claims that went to the jury as a

---

[8] BMO concedes that it did not request an evidentiary hearing before the circuit court imposed the summary judgment sanction.   BMO couples this concession with an argument it could not have known that the circuit court would impose a discovery sanction.   We are not persuaded.   As stated elsewhere in this opinion, the circuit court clearly put BMO on notice that it would impose the sanction of summary judgment on liability if BMO failed to comply with discovery.  Mohns' motions in limine raised discovery issues and put the issue of sanctions squarely before the circuit court.   Furthermore, BMO's claim that it requested an evidentiary hearing is unsupported by a record reference.   "The burden is upon the party alleging error to establish by reference to the record that the error was specifically called to" the circuit court's attention.  *See Allen v. Allen*, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977).   We do not address this issue further.  *Segall*, 114 Wis. 2d at 489 (we do not address issues raised for the first time on appeal).

[9] Having engaged in conduct that resulted in a sanction of summary judgment on liability, BMO cannot now argue that it was deprived of a jury trial on liability.  *See Rao v. WMA Sec., Inc.*, 2008 WI 73, ¶45, 310 Wis. 2d 623, 752 N.W.2d 220.

result of the sanction imposed on BMO.  We also observe that on the question of whether the evidence was sufficient to support the jury's determination regarding damages, the appellant's brief neither cites to nor applies the applicable standard of review, as discussed below.

¶24     BMO argues that the jury's damage awards are not supported in the record.  The jury awarded damages to Mohns for three draws, interest at eighteen percent on the draws, lost profits, work completed after the draw applications, and compensation for the unjust enrichment experienced by BMO.  The jury also awarded $1 million in punitive damages, which the circuit court reduced to twice compensatory damages as required by WIS. STAT. § 895.043(6).

¶25     A jury verdict will be sustained if there is any credible evidence to support the verdict.  *Radford v. J.J.B. Enters., Ltd.*, 163 Wis. 2d 534, 543, 472 N.W.2d 790 (Ct. App. 1991).

> The credibility of the witnesses and the weight afforded their individual testimony are left to the province of the jury.  Where more than one reasonable inference may be drawn from the evidence adduced at trial, this court must accept the inference that was drawn by the jury.  It is this court's duty to search for credible evidence to sustain the jury's verdict, and we are not to search the record for evidence to sustain a verdict the jury could have reached but did not.

*Id.* (citations omitted).

¶26     While BMO focuses on the evidence it believes favors reversal on appeal, we must proceed as the standard of review requires us to do.  Our duty is "to search for credible evidence to sustain the jury's verdict, and we are not to search for evidence to sustain a verdict which the jury could have reached but did not." *Id.*  It was for the jury to assess the credibility of the witnesses and to draw

11

reasonable inferences from the evidence. *Id.* Mohns convincingly argues that the evidence was sufficient, and BMO does not confront the credible evidence in the record regarding Mohns' damages.

¶27   We turn to the punitive damage award.  BMO argues that the jury trial record does not contain evidence of conduct justifying punitive damages. Resolving this claim requires applying a standard of review that BMO does not discuss in its appellant's brief.  We will not craft BMO's arguments for it. *Vesely v. Security First Nat'l Bank*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593 (Ct. App. 1985) (we will not independently develop a litigant's argument).  We further note that as a result of the discovery sanction, the jury verdict stated that BMO "[made] an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Mohns Inc. to act upon it."  This was the basis on which the jury was asked to consider punitive damages.[10]

¶28   BMO argues that punitive damages could not be awarded as part of contract damages.  By citation to the record, BMO does not show that it raised this issue in the circuit court.  We do not address it. *Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333 (Ct. App. 1983) (we do not address issues raised for the first time on appeal).

¶29   BMO complains that the circuit court did not adequately inform the jury about the nature of the case and the claims against BMO.  We are unpersuaded.  The circuit court's opening instructions to the jury closely mirrored

---

[10] Punitive damages may be recovered if the defendant acted in "intentional disregard" of a party's rights. WIS. STAT. § 895.043(3).

BMO's proposed opening instructions. To the extent BMO complains that the circuit court admitted or excluded evidence regarding the nature of the case and the claims, those decisions were discretionary with the circuit court. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. BMO has not shown a misuse of discretion in these rulings.

¶30 BMO argues that Mohns could not receive compensatory and punitive damages for unjust enrichment because the special verdict declared that the parties had a contract.[11] The unjust enrichment and breach of contract claims were before the jury as a result of the discovery sanction imposed by the circuit court. The jury awarded damages for both claims. A challenge to damages had to proceed via postverdict motion. However, BMO's briefing on the postverdict motions is inadequate to permit appellate review of its challenge to damages. *Vesely*, 128 Wis. 2d at 255 n.5 (we will not independently develop a litigant's argument).

¶31 BMO argues that awarding prejudgment interest at eighteen percent was error because BMO did not agree to that interest rate. However, Mohns offered evidence that the invoices for its work specified eighteen percent interest per annum on past due amounts. The jury was free to consider this evidence.

¶32 BMO challenges the circuit court's award of attorney's fees to Mohns from September 16, 2016, through postverdict motions. BMO argues that it is "self-evident that the vast majority of the fee award includes many that would

---

[11] BMO did not argue in its presanction summary judgment motion that Mohns could not pursue both breach of contract and unjust enrichment claims. Thereafter, BMO was sanctioned. As a result of the sanction, these claims were submitted to the jury for a determination of damages.

have been incurred in this whether or not the supposed discovery violations took place." We do not address this argument because BMO's general record citations are inadequate and leave us to ferret out those instances in which fees would have been incurred regardless of BMO's conduct during discovery. We decline to do so. *See* **Mogged v. Mogged**, 2000 WI App 39, ¶19, 233 Wis. 2d 90, 607 N.W.2d 662 (1999).

¶33 BMO argues that the circuit court displayed bias against it. The circuit court sanctioned BMO for its conduct in connection with discovery. The sanction and the findings supporting it provide context for the circuit court's remarks and its view of BMO's conduct. BMO has not rebutted the presumption that the circuit court "acted fairly, impartially, and without bias." **Miller v. Carroll**, 2019 WI App 10, ¶12, 386 Wis. 2d 267, 925 N.W.2d 580.

¶34 Having held that no error occurred, we necessarily reject BMO's argument that justice miscarried. **State v. Echols**, 152 Wis. 2d 725, 745, 449 N.W.2d 320 (Ct. App. 1989) ("[l]arding a final catch-all plea for reversal with arguments that have already been rejected adds nothing").[12]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[12] We have considered all of the arguments raised in the briefs. To the extent we have not addressed an argument raised on appeal, the argument is deemed rejected. *See* **State v. Waste Mgmt. of Wis., Inc.**, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.").